144 So.2d 155 (1962)
EARL STAEHLE FINANCE, INC.
v.
Edwin M. BROOKS, Jr.
No. 447.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
*156 Gordon B. Hyde, New Orleans, for defendant-appellant.
Ferdinand M. Lob, Metairie, Thomas S. Loop, New Orleans, for plaintiff-appellee.
Before MILLER, VIDRINE and CUTRER, JJ.
CECIL C. CUTRER, Judge pro tem.
The issue for our determination is whether an indebtedness created by a certain promissory note executed by defendant-appellant, Edwin M. Brooks, Jr., was discharged as a result of subsequent bankruptcy proceedings.
Prior to September 18, 1959, the appellant, defendant, executed a note in favor of the plaintiff finance company as a result of a loan made to the defendant, which note was payable in installments. On September 18, 1959, the defendant was in arrears on this installment note. At that time an indebtedness of $364.00 in principal was due to the plaintiff as a result of the default in payment thereof. On September 18, 1959, Brooks executed the note in question in favor of the plaintiff finance company as a renewal note, the face value of which represented the $364.00 owing on the prior note, $25.00 in cash paid to Brooks, $128.44 interest on the loan and $10.56 for insurance premiums. On the day the note was executed and just prior to the consummation of the transaction, a loan application was filled out and signed by the defendant wherein the defendant represented to the plaintiff that in addition to the amount owed plaintiff, the total amount of his outstanding indebtedness was $755.00. The schedule of creditors, filed in the defendant's bankruptcy proceedings, showed an indebtedness on behalf of the defendant in the amount of $16,253.86 as of September 18, 1959. Thus, the defendant failed to declare more than $15,000.00 in debts owed by him at the time the application was submitted to the plaintiff by the defendant.
The defendant failed to make any payments upon this note and this suit was filed on the note of September 18, 1959, for the principal amount of $528.00 together with 20 per cent attorney fees on principal and interest and for all costs of these proceedings.
The defendant filed an exception of no cause or right of action pleading his discharge in bankruptcy in proceedings No. 9877 in the United States District Court for the Eastern District of Louisiana, wherein the defendant was fully discharged on May 12, 1960, and the debt involved in this suit was listed in the bankruptcy proceedings and was fully discharged thereby. This exception was referred to the merits and after answer was filed and the special plea of discharge in bankruptcy was again set *157 up as a specific defense, the trial on the merits was had.
The trial court rendered judgment in favor of the plaintiff and against the defendant in the sum of $389.00 with 8 per cent interest thereon from November 1, 1960, together with 20 per cent attorney fees on the principal and interest and for the costs of the proceedings. This appeal was taken by the defendant-appellant.
The plaintiff-appellee has not answered this appeal, but asks for an affirmance of the lower court's judgment. Thus, the issue of whether the plaintiff is entitled to the difference between the judgment awarded and the amount that it originally prayed for, which difference represents $128.44 as interest and $10.56 for insurance premiums, is not before this Court.
Section 17 of the Bankruptcy Act (11 U.S.C.A. § 35) provides that:
"(a) a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, * * *."
In the case of DeLatour v. Lala, 15 La.App. 276, 131 So. 211 and also in the case of C H F Finance Company, Inc. v. Jochum, 241 La. 155, 127 So.2d 534, our courts have analyzed the foregoing language and stated that before this section would be applicable, "the plaintiff must show: (1) that defendant made false representations; (2) that these representations were made with the intention of defrauding the plaintiff, and (3) that the plaintiff relied upon and was misled by the false pretenses or representations." These principles are the principles of law which are applicable to this case. We will proceed then to review the correctness of the lower court's decision in the light of the requirements set out above.
Plaintiff has clearly sustained the burden of showing that the defendant made false representations when he produced the application which was filled out and signed by the defendant and tendered to the plaintiff in order to obtain the second loan, which application reflected only $755.00 outstanding indebtedness when, in reality, the defendant owed the sum of $16,253.86 on the date of this application. By any standard, this was a misrepresentation and was "material."
The plaintiff must then show that the false representations were made with the intention of defrauding the plaintiff. Collier on Bankruptcy, 14th Edition, Volume 1, Section 1440, provides as follows:
"While the burden of proof is upon the objecting creditor to establish the cause which he claims bars the discharge, yet, when such creditor shows that a materially false statement was made and that credit was obtained thereby, the burden is on the bankrupt to disprove intent to deceive."
When the plaintiff introduced this application which showed the material misrepresentations thereon, and the plaintiff was led to believe that the statement was complete, upon the introduction of such evidence, the burden of proof shifts to the bankrupt to prove otherwise. See Third National Bank v. Schatten, Sixth Circuit, 81 F.2d 538 and cases cited therein.
We have carefully examined the record and find that defendant has not sustained this burden of proof nor has he shown any other reason for the misrepresentation of his financial condition other than for the obvious and apparent reason of misleading the plaintiff into renewing and extending credit to him. Accordingly, we find that the plaintiff has successfully met the second requirement imposed upon him.
The third and final question to be ascertained is whether the plaintiff relied upon or was misled by the false pretenses or representations of the defendant.
*158 Mr. Staehle testified that the false financial statement made by the defendant was made out of his presence and before the loan was renewed. He further testified that he was not a member of the Finance Company Exchange, which furnishes its participating members with names of the creditors of a prospective debtor, thus, he had to rely entirely upon the accuracy of the financial statement given in deciding whether a loan should be made. (Tr. page 6). In order for the trial judge to have rendered judgment as he did, he must have believed Mr. Staehle and judged him to be a creditable witness. We find no manifest error in this conclusion. Especially applicable to the instant case is the following excerpt from the learned article written by Judge Albert Tate, Jr., Chief Judge, Court of Appeal, Third Circuit, State of Louisiana, reported in 22 Louisiana Law Review, page 605, 614, which articulates the position of this Court:
"* * * to whatever degree (and it must be some) the trial judge's seeing and hearing the witness testify in person assists him in evaluating the witness' truthfulness and accuracy, he is in a better position to do so than the appellate court, which has only the cold record to go by and which does not see and hear the witness even this once."
As to the fact that this was a renewal of a previous loan, the note evidencing said loan being delinquent at the time the second loan was granted, a similar situation was before the Second Circuit Court of Appeal in the recent and factually similar case of Beneficial Finance Company of Louisiana v. Hill, 128 So.2d 209 (1960), where the defendant who also had been discharged in bankruptcy, relied on the fact that he had borrowed money over a long period of time from the plaintiff and was delinquent on one loan at the time the loan in question, evidenced by the note sued upon, was made in order to show that plaintiff did not rely solely on the false financial statement defendant made in applying for said loan but, on the contrary, was generally familiar with defendant's bad financial condition. In the course of its opinion the court made the following statement which is appropos to our position re the instant case:
"* * * the trial judge held that the defendant knowingly made a misstatement of his financial condition at the time he made the original loan, and that because the false statement was relied upon by the finance company, it operated as a bar against the defendant obtaining a discharge under the bankruptcy act. We can find no error in the conclusion reached by the judge below on this question. As pointed out by him, in his written opinion, there was no reason to doubt the testimony of the official who originally made the loan to the effect that he would not have made same if he had known the true financial condition of the defendant."
Defendant cited in his brief two cases where the plaintiff creditor was unsuccessful in invoking Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35; Equitable Securities Company v. Schwaner, La.App., 107 So.2d 330 and Public Finance Corporation of Baton Rouge v. James, La.App., 119 So.2d 578, to support his contention that, based on the record herein, the trial court's judgment should be reversed. Although both cases are superficially similar to the instant case they are, upon analysis, distinguishable. In the Schwaner case the plaintiff's representative made contradictory statements on direct and cross-examination on the crucial issue of whether plaintiff had agreed to make the loan before or after the false financial statement was made by defendant. Based on this, the court held that the trial judge had committed manifest error in believing plaintiff's representative and rendering judgment in plaintiff's favor. In the James case, which affirmed the decision of the trial court, the defendant failed to list on his financial statement a number of open accounts representing a substantial indebtedness, however, defendant stated *159 that he had told plaintiff's representative about these debts not listed when he applied for the loan and the plaintiff's representative did not categorically deny this but simply stated he could not remember that defendant had informed him of the debts. Accordingly, the Court of Appeal found no manifest error in the trial judge's conclusion that plaintiff had not been misled by defendant, but had been fully informed of his financial condition by defendant prior to the loan. From what we have found in this record, the factual findings of those cases are distinguishable, and hence does not warrant the application of either of those authorities.
For the foregoing reasons, the judgment of the lower court is affirmed in all respects, costs to be taxed to defendant-appellant.
Judgment affirmed.